UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BELINDA LEMAIRE                                                                    PLAINTIFF

v.                                    No. 5:17-CV-05104

MONSTER ENERGY COMPANY                                                    DEFENDANT

## OPINION AND ORDER

Before the Court is Defendant's motion (Doc. 33) to require Plaintiff to submit to an independent medical examination. Defendant has filed a brief in support (Doc. 34) and Plaintiff has filed a response (Doc. 35) and brief (Doc. 36) in opposition. Defendant has separately filed a motion in limine (Doc. 39) to exclude expert opinion testimony by Plaintiff's expert, Dr. Tina Merritt, and a brief (Doc. 40) in support. Plaintiff has filed a response (Doc. 42) and brief (Doc. 43) in opposition to the motion to exclude. Several of these documents are filed with access restricted to the Court and the parties because they address Plaintiff's medical history. The motions will be granted as set forth herein.

Plaintiff asserts several claims against Defendant for violations of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), and the Arkansas Civil Rights Act (ACRA). With respect to her disability-based claims, Plaintiff asserts that she has a severe allergy to seafood that qualifies as a disability and that Defendant has discriminated against her and refused to accommodate her on the basis of this disability.

Defendant's motion for an independent medical exam argues that in the course of the accommodation process and discovery during this lawsuit, it has become clear that there is no objective evidence Plaintiff suffers from an allergy that requires accommodation. Defendant asks

1

the Court to order Plaintiff to submit to an appropriate medical examination under Federal Rule of Civil Procedure 35. The Court may enter such an order if a party's medical condition is in controversy, there is good cause for the examination, and the order specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2).

There is no question that Plaintiff has placed her medical condition in controversy. Some of her ADA claims depend on her showing that she is a disabled person within the meaning of the statute. A person is disabled if she has "(A) a physical or mental impairment that substantially limits one or more of [her] major life activities . . . ; (B) a record of such impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff alleges that she has a seafood allergy that is so severe that she can suffer anaphylaxis just from being in the vicinity of seafood. Because Defendant's office where Plaintiff is employed to work is located in the same building as a seafood restaurant, it is this allergy for which she seeks accommodation. Defendant disputes Plaintiff's evidence of her allergy. Therefore, Plaintiff's medical condition is in dispute.

There is also good cause to order Plaintiff to submit to a medical examination. The dispute over whether Plaintiff has a medical condition that substantially limits one or more of her major life activities is central to this litigation. Whether any physical impairment substantially limits a major life activity, and what accommodations are reasonable for such a physical impairment, are issues that can be resolved only on the basis of evidence that is probative of the nature of the physical impairment. Although Plaintiff's testimony regarding her own physical reactions is relevant to resolving the ultimate issues in this case, because Plaintiff's medical condition is in controversy, and because an expert's opinion regarding Plaintiff's medical condition likely will help the Court understand the evidence or determine the facts, there is good cause to require

2

Plaintiff to submit to examination by an expert.

Plaintiff has already voluntarily submitted to a medical examination by her own expert witness, Dr. Tina Merritt, who diagnosed Plaintiff with a seafood allergy. After a full and careful review of the January 19, 2018 deposition of Dr. Merritt, however, the Court will exclude from trial any opinion testimony offered by Dr. Merritt regarding Plaintiff's medical condition.

A medical diagnosis by a treating physician is an expert opinion and is subject to the same standards of admissibility as any other expert opinion. *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207 (8th Cir. 2000) ("A treating physician's expert opinion on causation is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for the purposes of litigation."). Regarding the admissibility of expert opinions, Federal Rule of Evidence 702 allows that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Though the Court was unable to verify[1] that Dr. Merritt has maintained the board certification she claims to have, Dr. Merritt appears to be qualified as an expert on account of her knowledge, skill, experience, training, or education. (Doc. 36-1, pp. 4–5 (Deposition of Tina Merritt, M.D., pp. 11:16–16:7 (Jan. 19, 2018) (hereinafter "Merritt Deposition") (testifying about her education and experience)); (Doc. 36-1, p. 20 (Merritt Deposition, pp. 75:22–76:9 (assessing herself as one of the top three food allergists in the United States))).

---

[1] The American Board of Allergy and Immunology verification of certification tool is available online at https://www.abai.org/doctors.

Despite her qualifications, three of the four Rule 702 factors weigh against admissibility of Dr. Merritt's testimony regarding Plaintiff's medical condition. Dr. Merritt does not appear to have based her opinion on sufficient facts or data. In diagnosing Plaintiff with a seafood allergy, Dr. Merritt relied in large part on Plaintiff's self-reported medical history. Dr. Merritt testified that Plaintiff self-reported that after eating crawfish 20 years prior to visiting Dr. Merritt, Plaintiff had gone into a ten-day coma. (Doc. 36-1, p. 11 (Merritt Deposition, p. 37:17-24)). Dr. Merritt did not try to obtain medical records for that event, however, believing that the records had likely been destroyed. (Doc. 36-1, p. 11 (Merritt Deposition, pp. 38:25–39:16)).

Dr. Merritt also testified that objective evidence of a food allergy is typically obtained through the use of an IgE test (also referred to as a blood test) or a skin test. (Doc. 36-1, p. 7 (Merritt Deposition, p. 22:2-7)). The IgE test measures Immunoglobulin E antibodies in a patient's bloodstream to determine whether antibodies specific to particular allergens are present, and in what amount, while the skin test topically measures IgE-mediated allergic reactions. (Doc. 36-1, p. 6 (Merritt Deposition, p. 17:10–19:5, 19:6–20:1)); *see also* Am. Coll. of Allergy, Asthma & Immunology, Food Allergy, *available at* https://acaai.org/allergies/types/food-allergy (select "Diagnosing Food Allergies" in left-hand column) (last accessed Aug. 30, 2018); Am. Coll. of Allergy, Asthma & Immunology, Skin Test, *available at* https://acaai.org/allergies/treatment/allergy-testing/skin-test (last accessed Aug. 30, 2018); Am. Acad. of Allergy Asthma & Immunology, Immunoglobulin E (IgE) Definition, *available at* https://www.aaaai.org/conditions-and-treatments/conditions-dictionary/immunoglobulin-e-(ige) (last accessed Aug. 30, 2018).

Dr. Merritt administered multiple IgE tests to Plaintiff, and the results indicated that Plaintiff was not having an IgE-mediated allergic reaction to the presence of lobster, codfish, crab, shrimp, tuna, salmon, or oyster. (Doc. 36-1, p. 12, 15 (Merritt Deposition, pp. 41:11–41:20, 43:3-

6, 55:23–56:12)). Despite the results indicating no allergic reaction to seafood, and despite her clinic being equipped to treat anaphylaxis or other severe reactions to other allergy tests, Dr. Merritt did not administer a skin test because Plaintiff claimed to be highly sensitive to seafood. (Doc. 36-1, p. 12 (Merritt Deposition, pp. 43:24–44:7 (also declining to test Plaintiff with a "food challenge"))). In addition to Plaintiff's self-reported medical history and the negative IgE test, Dr. Merritt also relied on tests (Immunoglobulin G, or "IgG" and ALCAT) that typically are not used by licensed allergists to test food allergies and are not FDA approved for determining whether a patient has a food allergy. (Doc. 36-1, pp. 7, 15, 18 (Merritt Deposition, pp. 23:13-23, 56:17–63:15, 67:2–67:18)); *see also* Steven O. Stapel, et al., Testing for IgG4 against foods is not recommended as a diagnostic tool: EAACI[2] Task Force Report, 63 *Allergy* 793 (2008) (EEACI position paper reviewing literature and recommending IgG serum antibody test not be performed for food-related complaints) (PDF *available at* https://www.eaaci.org/attachments/ 877_EAACI%20Task%20Force%20Report.pdf (last accessed Aug. 30, 2018)); Am. Acad. of Allergy Asthma & Immunology, AAAAI support of the EAACI Position Paper on IgG4 (May 2010) (AAAAI position paper agreeing with EAACI position paper and taking stance against IgG allergy testing) (PDF *available at* https://www.aaaai.org/aaaai/media/medialibrary/ pdf%20documents/practice%20and%20parameters/eacci-igg4-2010.pdf (last accessed Aug. 30, 2018)); Stuart Carr, et al., CSACI[3] Position statement on the testing of food-specific IgG, 8(1) *Allergy, Asthma & Clinical Immunology* 12 (2012) (issuing formal statement supporting AAAAI and EAACI position papers) (*available at* https://www.ncbi.nlm.nih.gov/pmc/ articles/PMC3443017/ (last accessed Aug. 30, 2018)); Cell Science Systems, ALCAT Test:

---

[2] European Academy of Allergy and Clinical Immunology.
[3] Canadian Society of Allergy and Clinical Immunology.

Overview, https://cellsciencesystems.com/ providers/alcat-test/ (last accessed Aug. 30, 2018) (ALCAT test vendor website claiming that the ALCAT test "measures food/immune reactions through stimulation of leukocytes" and that "The Alcat Test is does not identify type 1 classical IgE mediated (anaphylaxis) allergies.").

Ultimately, Dr. Merritt testified that she relied only on Plaintiff's self-reported history, and no objective evidence, when diagnosing Plaintiff with an allergy to "any exposure to seafood including fish." (Doc. 36-1, p. 20 (Merritt Deposition, p. 74:14-19)).

Dr. Merritt's diagnosis also does not appear to be the product of reliable principles or methods reliably applied to the facts.

> When determining the reliability of an expert's opinion, the district court examines the following four non-exclusive factors: (1) whether it can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and application; (3) the known or potential rate of error; and (4) the method's general acceptance. The above listed factors are not exhaustive or limiting, and a court must use the factors as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case. In addition, the district court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. While weighing these factors, the district court must continue to function as a gatekeeper who separates expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge.

*Presley v. Lakewood Eng'g and Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (citations and quotations omitted). Nowhere is the unreliability of the principles and methods supporting Dr. Merritt's diagnosis of Plaintiff's seafood allergy more clearly demonstrated than when Dr. Merritt distinguished herself and her practice from "inside the box" or "evidence-based medicine," explaining she practiced as "more of an art-of-medicine person." (Doc. 36-1, pp. 28–29 (Merritt Deposition, pp. 108:21–109:7)).

With respect to whether her opinion could be tested, only the IgE tests Dr. Merritt

6

administered to Plaintiff were approved by the FDA and accepted by allergists as a means of diagnosing food allergies.  Dr. Merritt testified that a high number result for a food on the unaccepted IgG test she administered indicates that the body is reacting as if the food were an infection, though she admitted that this test is not endorsed by the American College of Allergy and Immunology for diagnosing food allergies and she could not name, but only vaguely referenced, articles that indicated the test could be used to diagnose food allergies.  (Doc. 36-1, pp. 7–8 (Merritt Deposition, pp. 22:8–25:1)); *but see* Am. Coll. of Allergy, Asthma & Immunology, Can IgG blood testing check for delayed food allergies?, *available at* https://acaai.org/resources/connect/ask-allergist/can-igg-blood-testing-check-delayed-food-allergies (last accessed Aug. 30, 2018) (explaining a high IgG number suggests the body's tolerance of a food rather than an allergy, and declining to recommend IgG tests for evaluation of food allergies); Am. Acad. of Allergy Asthma & Immunology, The Myth of IgG Food Panel Testing, *available at* https://www.aaaai.org/conditions-and-treatments/library/allergy-library/IgG-food-test (last accessed Aug. 30, 2018) (same).  Dr. Merritt also testified that the ALCAT test she administered was not endorsed by the American College of Allergy and Immunology—or any other major organization—for diagnosing food allergies, and that using it was "outside the box."  (Doc. 36-1, p. 9 (Merritt Deposition, pp. 29:8–32:1)).  Again, Dr. Merritt's use of that phrase distinguishes her practice from evidence-based medicine.

Plaintiff's response to the motion to exclude Dr. Merritt's testimony argues that many medical conditions can be and are diagnosed with a patient's self-reporting of symptoms, and without an objective test.  Plaintiff ignores her own citations to the extent that diagnosis of these other conditions relies on objective tests to rule out other causes and factors, rather than relying solely on self-reported symptoms.  More crucially, Plaintiff ignores that objective tests exist for

7

diagnosing food allergies. Dr. Merritt's decision to discount the negative results of the one accepted objective test she administered, and not to administer the other accepted objective tests, does not bolster the reliability of her opinion, but weakens it.

Dr. Merritt made no claims about whether her methods were subject to peer review, but testified that publication of at least one article regarding their efficacy may be forthcoming. Dr. Merritt did not testify about the known or potential rates of error of either the evidence-based tests or of her "outside the box" tests, and her method for diagnosis of a food allergy is not generally accepted by the medical community. Dr. Merritt did not rule out alternatives—in particular, Dr. Merritt did not test whether Plaintiff might have a food allergy to something other than seafood. Though Dr. Merritt was initially hired by Plaintiff for treatment, and not for the purposes of litigation, it appears Dr. Merritt's diagnostic process was targeted at bolstering Plaintiff's requested ADA accommodation rather than intended to determine Plaintiff's medical condition.

Dr. Merritt relied only on Plaintiff's self-reported history and no objective evidence, and her diagnosis of Plaintiff as suffering from a seafood allergy is subjective speculation that masquerades as scientific knowledge. It is not reliable, and it will not be admitted into evidence.

Because her diagnosis is inadmissible, Dr. Merritt's expert medical examination does not assist the Court, so good cause remains to require Plaintiff to submit to a medical examination. Defendant proposes that Plaintiff submit to medical examination by Dr. Matthew Bell. (Doc. 33, p. 4). Dr. Merritt testified that Dr. Bell is a competent clinical allergist with an academic background who practices evidence-based medicine. (Doc. 36, p. 28 (Merritt Deposition, p. 108:15-23)).

Defendant has submitted proposed time, place, manner, and scope conditions for a medical examination by Dr. Bell. Plaintiff objects to some of the proposed tests and proposes counter

conditions. The Court will order Plaintiff to submit to an IgE test of a blood sample drawn by Dr. Bell and to a skin-prick test. No food challenge will be ordered yet, as there appears to be no dispute at this time that a food challenge poses more risks than either an IgE test or a skin-prick test, and the IgE test and skin-prick test may provide enough information for Dr. Bell to diagnose Plaintiff with or to rule out a diagnosis of a seafood allergy. Plaintiff's request to unilaterally decide whether a testing location is safe is rejected, as she has identified no reason to believe Dr. Bell's clinic is unsafe. Plaintiff's request that the Court order that she be told in advance of her appointment which specific foods or other substances her blood sample will be tested for is rejected, as she has identified no reason why that would be necessary, though Dr. Bell is not precluded from exercising his professional judgment and abiding by his professional obligations in providing any information to Plaintiff. Plaintiff will be partially accommodated in her request to be accompanied by a witness, and Dr. Bell will be directed to provide his diagnosis and any reports to both parties.

IT IS THEREFORE ORDERED that Defendant's motions (Docs. 33 and 39) are GRANTED.

IT IS FURTHER ORDERED that Plaintiff submit to a medical examination by Dr. Bell at the Hedberg Allergy and Asthma Center, 1585 E. Rainforest Road, Fayetteville, AR 72703, to determine whether she has a seafood allergy. With respect to scope of the medical examination, Dr. Bell will obtain a blood serum sample from Plaintiff for the purposes of submitting it to an accredited and properly licensed laboratory in order to obtain Plaintiff's IgE results. Dr. Bell will then conduct an appropriate skin-prick examination to determine whether Plaintiff has a seafood allergy based on skin contact in an appropriate, controlled clinical environment equipped to handle any potential allergic reactions, including anaphylaxis. Plaintiff may be accompanied during her

appointments with Dr. Bell by her counsel of record or by other personnel employed by their law firm.  If Plaintiff desires that some other person be her witness instead, that witness may be present during her appointments with Dr. Bell, subject to his professional judgment and obligations.

At this time, the Court will not order Plaintiff to submit to a double-blind placebo food challenge.  If Dr. Bell determines, based upon his objective diagnostic evaluation, that Plaintiff should submit to a double-blind placebo food challenge, and if Plaintiff objects, Defendant may file an additional motion and the parties may brief that issue for the Court.  Although Plaintiff need not submit to a double-blind placebo food challenge in the absence of a separate Court order, she must submit to any other necessary follow-up laboratory or assessment work in order for Dr. Bell to complete his diagnostic evaluation.  Dr. Bell is to provide any diagnosis or report regarding Plaintiff's condition to both parties.

IT IS FURTHER ORDERED that because the time for examination proposed by Defendant has passed, the parties will find a mutually agreeable time for Plaintiff to submit to examination within 30 days of entry of this order.  Defendant is ordered to pay all costs associated with Dr. Bell's medical examination so long as Plaintiff arrives at her appointments on time and completes the required examinations.

Plaintiff is reminded that failure to comply with this order will result in an appropriate sanction, including dismissal.

IT IS SO ORDERED this 30th day of August, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE