IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**BELINDA LeMAIRE**                                              PLAINTIFF

VS.                   **CASE NO. 5:17-CV-5104 (PKH)**

**MONSTER ENERGY COMPANY**                                       DEFENDANT

### AFFIDAVIT OF DR. MATTHEW BELL

COUNTY OF WASHINGTON    )
                        ) ss.
STATE OF ARKANSAS       )

I, Dr. Matthew Bell, being duly sworn, do hereby state under oath the following:

1. My name is Dr. Matthew Bell. I am over the age of twenty-one and competent to execute this Affidavit. I make this Affidavit under penalty of perjury, based on my personal knowledge, and on my own free will.

2. I have been retained by Defendant Monster Energy Company's counsel to assess the medical aspects of Plaintiff Belinda LeMaire's claimed seafood allergy, and to testify at trial regarding my medical opinion as to whether there is any objective evidence to support Plaintiff's contention.

3. I am employed as an Allergist-Immunologist with the Hedberg Allergy & Asthma Center (Hedberg Clinic), which has offices in Rogers and Fayetteville, Arkansas.

4. Plaintiff was scheduled to undergo a skin-prick examination at my office in Fayetteville, Arkansas on September 18, 2018 at 4 p.m.

5. It was requested that Plaintiff be allowed to enter the Hedberg Clinic through a back entrance reserved only for employees because she did not want to be near the office aquarium. Due to patient privacy concerns, I initially declined this request and instead, though it is

238068                            1



my medical opinion that the presence of an office aquarium posed no medical or health risk to Plaintiff, made arrangements for Plaintiff to be taken directly into an examination room upon her arrival to the Hedberg Clinic on September 18, 2018 so that her exposure to the aquarium would be limited.

6. At around 3:55 p.m. on September 18, 2018, I observed Plaintiff arguing with her attorney in the Hedberg Clinic parking lot for several minutes.

7. Because Plaintiff was causing a disruption outside of the Clinic, at around 4 p.m., I directed my Administrator, Evelyn Aponte, to greet Plaintiff and her attorney in the parking lot and to offer to lead them into the Clinic through the back entrance.

8. At around 4:05 p.m., I witnessed Plaintiff drive away from the Hedberg Clinic.

9. Plaintiff did not submit to the scheduled skin-prick examination on September 18, 2018.

10. Shortly after Plaintiff drove away from the Hedberg Clinic, her attorney, Mr. Joe Gilker, came into the Clinic to apologize me and Ms. Aponte for Plaintiff's conduct and behavior.

11. Mr. Gilker also asked me if there was a possibility of rescheduling the skin-prick examination for another day and at an alternative location.

12. I told Mr. Gilker that it would be exceedingly difficult for me to conduct the skin-prick examination at another non-Hedberg location. Importantly, both Hedberg Clinic locations have decorative office aquariums in the lobby area.

13. I have no other location at which I could conduct a skin-prick examination other than at the Hedberg Clinic's Fayetteville and Rogers locations.

14. In my practice, I treat several patients with severe allergies to fish and shellfish.

238068

15. I have never had any patient experience any allergic reactions due to the presence of the decorative office aquariums in either Hedberg Clinic location. Anaphylaxis due to live fish in an aquarium has not been reported anywhere in the medical literature based on my research.

16. It is my medical opinion and judgment that both Hedberg Clinic locations are safe for Plaintiff to undergo a skin-prick examination to determine whether she has a seafood allergy.

17. Both Hedberg Clinic locations are controlled clinical environments that are equipped to handle potential allergic reactions, including anaphylaxis.

18. I do not know where I could conduct Plaintiff's skin-prick examination other than at one of the Hedberg Clinic locations.

19. Even if I could find another location to conduct Plaintiff's skin-prick examination, I have no ability to determine in advance whether the location is appropriately equipped to handle and treat allergic reactions, including anaphylaxis.

20. It would be exceedingly difficult for me conduct Plaintiff's skin-prick examination at an off-site location because I would have to transport my staff and bring my own equipment, and I additionally would not have access to my electronic medical records systems which I would need to properly document Plaintiff's skin-prick examination. Nor would I necessarily have access to equipment and medications needed to treat anaphylaxis.

21. As stated in my Expert Report, I have observed no objective evidence that Plaintiff has any allergy to fish, shellfish, or seafoods of any variety.

22. In fact, Plaintiff submitted a blood serum sample to Quest Diagnostics on September 18, 2018. I received the laboratory results from Quest Diagnostics on September 24, 2018, in which serum-specific IgE testing revealed specific IgE levels of <0.1 kU/L to all allergens tested. The specific allergens tested include: (1) crayfish; (2) tilapia; (3) haddock; (4) blue mussel;

(5) gulf flounder; (6) scallops; (7) anchovy; (8) squid; (9) codfish; (10) crab; (11) shrimp; (12) tuna; (13) salmon; (14) lobster; (15) halibut; (16) trout; (17) clam; (18) oyster; and (19) catfish.

23. Although a skin-prick examination is required in order for me to fully assess Plaintiff's alleged seafood allergy, the results of Plaintiff's IgE blood serum test are consistent with an absence of allergic sensitivity to the tested allergens.

24. This concludes my Affidavit.

*MCBellms*

Dr. Matthew Bell

## NOTARY

SUBSCRIBED AND SWORN to before me the undersigned notary public on this 25 day of September, 2018.

*Michael Leon*

NOTARY PUBLIC

My Commission Expires:

12/10/22

OFFICIAL SEAL
MICHAEL LEON
NOTARY PUBLIC . ARKANSAS
WASHINGTON COUNTY
COMMISSION No. 12391230
COMMISSION EXP. 12/10/2022

4

238068