IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**BELINDA LeMAIRE**                                                                 **PLAINTIFF**

VS.                              **CASE NO. 5:17-CV-5104 (PKH)**

**MONSTER ENERGY COMPANY**                                               **DEFENDANT**

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE, AND FOR PAYMENT OF ATTORNEYS' AND EXPERT FEES

Defendant Monster Energy Company (MEC), by its attorneys CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C., and for its Brief in Support of its Motion to Dismiss Plaintiff Belinda LeMaire's Complaint with Prejudice, and For Payment of Attorneys' and Expert Fees, states as follows:

### I. INTRODUCTION

On September 18, 2018, Plaintiff Belinda LeMaire willfully violated this Court's August 30, 2018 Order, *ECF No. 47*, by refusing to submit to her scheduled skin-prick examination with Dr. Matthew Bell at the Hedberg Allergy and Asthma Center's (Hedberg Clinic) Fayetteville location. Plaintiff's misconduct, however, is significantly more serious than only failing to arrive for a previously-scheduled appointment: by her own account, Plaintiff "cause[d] a freaking scene" in the Hedberg Clinic parking lot, and—without any justification or provocation—she repeatedly directed abusive language at a Clinic employee who merely offered to lead Plaintiff into the building through a back entrance, as her attorney had previously requested.

Plaintiff was fully aware of the consequences associated with her refusal to submit to the examination, *id.* at P. 10 ("Plaintiff is reminded that failure to comply with this order will result in an appropriate sanction, including dismissal."), and she must now be held accountable under

238009

Rules 37(d) and 41(b) of the Federal Rules of Civil Procedure. As discussed throughout this Brief, Plaintiff's uniquely contemptuous conduct demands dismissal of her Complaint with prejudice, together with an additional sanction of being ordered to pay for all of MEC's reasonable attorneys' and expert fees and costs incurred in connection with her refusal to comply with the Court's Order.

## II. FACTUAL BACKGROUND

**A.   The Parties' Agreement Regarding the Date and Time of Dr. Bell's Skin-Prick Examination**

On August 31, 2018, the parties' attorneys began what would eventually become a two-week process of scheduling Plaintiff's skin-prick examination. Specifically, MEC provided Plaintiff with eleven proposed dates on which to submit to the skin-prick examination, and after multiple follow-up emails, on September 14, 2018, Plaintiff's counsel finally advised MEC's counsel that Plaintiff had selected Tuesday, September 18, 2018, at 4:00 p.m. to undergo a skin-prick examination. **Exhibit 1**, Scheduling Correspondence Exchanged Between Counsel.[1]

Notwithstanding Plaintiff's apparent representation that she would comply with the Court's Order, on September 17, 2018, Plaintiff inexplicably left a voicemail for Dr. Bell on the Hedberg Clinic's office line in which she accused Dr. Bell and the Clinic of lying and attempting to kill her, to wit:

> My name is Belinda LeMaire. My date of birth is April 5, 1957. I would like you to kindly review your records of me back to July 27, 2016, where your office did not correctly document my visit **and lied about what I said to the front desk person**. And this Dr. Bell, who is going to do testing on me tomorrow supposedly directed by Dr. - - by Judge Holmes. I can't - - cannot believe you people. I cannot believe you people. You offered no assistance to me on July 27, 2016. I told you I was having an

---

[1] The parties' counsel also agreed that Plaintiff would submit her blood sample for an IgE test to Quest Diagnostics on September 18, 2018. Plaintiff provided that sample before her scheduled skin-prick examination.

238009

> allergic reaction. **You lied to me** on the phone when I asked if you had any fish or seafood in your office. And you said no, you would not do that to your patient. And then I start to have a reaction in your office and nobody did anything. The nurse and the doctor both stood there and did nothing to help me. I drove myself to Mercy Clinic, and they transported me by ambulance to Mercy Hospital. So, take a look at your records Dr. Bell, before you're gonna touch me. **But I'm going to look you in your eyes tomorrow.** If you kill me. If I die, I'm a grandmother, and my children and my grandchildren no longer have me. I did not cause a scene in your office that day. I asked why they didn't tell me that they had a fish tank when I called and she took me down the hallway. I also asked your nurse if my back was turning red because it was burning and she said yes. And she went and she got you. And neither of you did anything. Three times I asked – I said I needed to take medication. And none of you did anything. And so yes, I drove myself to Mercy Clinic. And I got some assistance that day. So what are you going to do to me tomorrow, Dr. Bell? What are you going to do to me tomorrow? This is life and death and have been told to me for 25 years **I could die in two minutes by a skin prick test**. So you go right on ahead 'cause I'm going to look you in the eye tomorrow, 4 o'clock, at your Fayetteville office. And I'm sure that's why they didn't schedule it for the Rogers office. **So yes, I'm going to make a scene right now** because I've been living with this, as insane as it might sound, the possibility of death tomorrow. Possible death. [Unintelligible]. This is my life. And it's in your hands. Again, my name is Belinda LeMaire, April 5, 1957.

**Exhibit 2**, Affidavit of Evelyn Aponte, with Multimedia Attachments (emphasis added).[2] Given the nature of this highly unusual and unjustified voicemail, in the evening of September 17, 2018, Defendant's counsel and Plaintiff's counsel held a telephone conference to confirm that Plaintiff intended to attend her mutually-scheduled examination with Dr. Bell. Additionally, because Plaintiff's voicemail referenced a "fish tank," Defendant's counsel also advised Plaintiff's counsel that both Hedberg Clinic locations likely were decorated with small office aquariums, and that confirmation about the presence of an aquarium would be provided on the

---

[2] As discussed in the Motion, a compact disc containing two multimedia files is attached to Ms. Aponte's Affidavit as attachment "A" to Exhibit 2. The two files are saved as follows: "Hedberg Clinic Voicemail – LeMaire – 9.17.18" and "Video of Conversation with LeMaire – 9.18.18". A placeholder image of the compact disc is uploaded on the Court's CM/ECF system with *Exhibit 2*, and the compact disc itself will be conventionally filed with the Court. MEC will also serve Plaintiff's counsel with a copy of the compact disc via U.S. Mail and via e-mail.

238009

following day. Plaintiff's counsel confirmed that Plaintiff would attend the skin-prick examination, and requested information as to whether Plaintiff could enter the Clinic through a back door to avoid the aquarium, if any.

On September 18, 2018, Defendant's counsel confirmed that both Hedberg Clinic locations were decorated with office aquariums, and thus advised Plaintiff's counsel that although the back entrance to the facility was reserved for staff only, arrangements were made to lead Plaintiff directly into an examination room from the front entrance upon arrival to minimize her apparent concern about the aquarium. Plaintiff's counsel did not raise any objection to this information or proposal, and again confirmed that Plaintiff would submit to the skin-prick examination as scheduled. **Exhibit 3**, Correspondence Dated September 18, 2018.

**B.    Plaintiff's Abusive Treatment of the Hedberg Clinic's Front Office Staff and Her Refusal to Submit to the Court-ordered Examination.**

At approximately 4:05 p.m. on September 18, 2018, after observing Plaintiff arguing with her attorney in the Hedberg Clinic parking lot, Evelyn Aponte, Administrator for the Hedberg Clinic, greeted Plaintiff and her attorney, and offered to lead them into the examination room through the staff-only entrance so as to accommodate Plaintiff's apparent concern about the aquarium. Because of Plaintiff's erratic behavior in the parking lot, Ms. Aponte felt it prudent to make a copy of their conversation, to wit:

> **APONTE:**   I'm the front desk ma'am. I can walk you into the exam room without you having to go into the front.
>
> **GILKER:**   Okay. Can we do that?
>
> **LEMAIRE:**   **No. I am not walking in there with a G\*\* d\*\*\* fish tank**. Why didn't y'all tell me? When I made the first appointment with Dr. Bell, I asked them on the phone if they had a fish or any seafood in their office, and she said, "No, we wouldn't do that to our patients." And I walk in there and I didn't even know there was a fish tank until I started having an allergic reaction.

238009

APONTE: Ma'am. Ma'am. I can walk you --

LEMAIRE: **I'm gonna cause a freaking scene right now** because this is my life. I walk in there and I can die. **I walk in there and y'all put that on my skin I can go into a coma and I can die**. Y'all are not going to freaking kill me. Monster Energy has done enough. They've given me my choice of life and death, and **I am not choosing death by Dr. Bell.** He stood five feet away from me, and your nurse, I asked her, my back was turning red and burning. I said, "I'm having an allergic reaction. Is my back turning red?" And she said, "yes, let me go get the doctor." **Not in your G** d*** notes.** Not in your notes. And y'all don't want me to be upset about whether I get to live or die, or I get to burn?

GILKER: Calm down, calm down, calm down.

LEMAIRE: **This is not happening.**

GILKER: She's not doing anything, she's not doing anything to you. I don't know why you are actually treating her like this.

LEMAIRE: Because the other nurses --

GILKER: She has nothing to do with this Belinda.

LEMAIRE: So the friggin' doctor is not going to come out --

GILKER: I'm sorry. I apologize for her. Okay? And I know you don't have anything to do Evelyn. It's not your--.

APONTE: Yeah --

LEMAIRE: You tell me what you would do if somebody were to put something on your skin that could kill you.

GILKER: Shh, calm down Belinda.

LEMAIRE: No.

APONTE: I was just going to walk her towards the back and we can take her straight into an exam room --

GILKER: [Unintelligible.]

LEMAIRE: No. **There's a G** d*** fish tank in there** and I've already ended up in the emergency room at the other office. You wanna see? You wanna see

238009

5

|  |  |
|---|---|
|  | the records? You wanna see what the frig it does to my body on the outside, and that's not what's happening on the inside of my body. And y'all want me to calm down. This is my life whether I live or die. |
| GILKER: * | Okay. Calm down Belinda. You don't -- don't have to yell at her. |
| LEMAIRE: | Then send the **d\*\*\* doctor** out. |
| GILKER: | Quit yelling at her. Quit yelling at her. Quit yelling at her. |
| LEMAIRE: | I'm not supposed to be upset? |
| GILKER: | Nope. You can be upset, but you don't have to yell at that poor lady. She has nothing to do with this. |
| LEMAIRE: | But the other nurses [unintelligible] -- |
| GILKER: | Okay, Evelyn, thank you. |
| APONTE: | You're welcome sir. |
| GILKER: | Okay, I'm sorry. I apologize. |
| APONTE: | That's fine. |

*Exhibit 2*. Plaintiff exited the parking lot shortly after the above exchange without ever entering the Clinic, and thus, without submitting to the Court-ordered skin-prick examination. Plaintiff's counsel then communicated with Dr. Bell, MEC's expert witness, to request whether there was another location other than Dr. Bell's clinic at which the examination could be conducted at some future time. Dr. Bell advised that he had no other options. **Exhibit 4**, Affidavit of Dr. Matthew Bell. Thereafter, at approximately 4:13 p.m., Plaintiff's counsel called Defendant's counsel to inform MEC that Plaintiff did not submit to the Court-ordered examination, and that he would advise MEC whether Plaintiff would reschedule the examination on the following day.

On September 19, 2018, because no response was provided by Plaintiff as represented, and after receiving and analyzing the recordings from September 17 and 18, 2018, MEC's counsel contacted Plaintiff's counsel to advise of the intended filing of this Motion, and to

238009

inquire as to whether Plaintiff's counsel was interested in conferring in good faith on a conference call. **Exhibit 5**, Correspondence Dated September 19, 2018.

On September 20, 2018, after receiving MEC's counsel's email, and despite the information obtained from Dr. Bell in the course of their conversation on September 18, Plaintiff's counsel dispatched a letter to MEC stating that Plaintiff refused to submit to the skin-prick examination because of the presence of an office aquarium in the lobby, and inquiring as to whether there was another location at which Dr. Bell could conduct the skin-prick examination. **Exhibit 6**, Correspondence from J. Gilker Misdated as September 19, 2018. This letter did not reference the fact that Plaintiff also apparently refused to submit to the skin-prick examination because she did not want Dr. Bell to "put that on [her] skin[,]" which she thought could cause her to "go into a coma and . . . die." *Exhibit 2(A)*.

MEC's counsel responded to this letter and advised that there were no other reasonable locations in which Dr. Bell could conduct the examination, and that this Court's Order specifically rejected Plaintiff's attempt to unilaterally decide whether a testing location is safe. **Exhibit 7**, Good Faith Correspondence Dated September 21, 2018. *ECF No. 47*, at P. 9. MEC's counsel also advised that an attempt to request Dr. Bell to perform the skin-prick examination in a foreign and unknown environment could actually present a safety concern, rather than alleviate such concerns.[3]  MEC's counsel and Plaintiff's counsel further discussed the issues addressed in this Motion and Brief in a telephone call on September 27, 2018 and were unable to reach any resolution.

---

[3] Dr. Bell's Affidavit specifically states that, in his medical opinion, there is no safety or health risk presented to Plaintiff by being in the general vicinity of an office aquarium. In fact, Plaintiff's IgE blood test result from her September 18, 2018 sample confirms that she has no IgE mediated seafood allergy.

238009

Because all issues relating to the aquarium were resolved by Ms. Aponte in the parking lot of the Hedberg Clinic, Plaintiff's attempt to salvage her claim by suggesting that she would submit to an examination in a new location is inappropriate and unavailing.

### III. ARGUMENT

Plaintiff's willful refusal to comply with this Court's Order, coupled with her profane and abusive treatment of Dr. Bell's staff, is—by all measures—indefensible. The question this Court must resolve is not *whether* Plaintiff should be sanctioned for her misconduct, but instead, *which* sanction would be sufficiently severe to serve Rules 37 and 41's objectives of punishment and deterrence. For the reasons set forth below, MEC respectfully asserts that the most appropriate sanction is to dismiss Plaintiff's Complaint with prejudice, and to further order her to pay MEC's attorneys' and expert witness fees and costs incurred in connection with her willful disobedience of this Court's Order.

**A. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE PURSUANT TO RULES 37 AND 41 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

A federal district court has broad inherent power to dismiss a plaintiff's claims for her failure to obey an order. *Link v. Wabash Ry. Co.*, 370 U.S. 626 (1962). This inherent authority is confirmed and codified in Rules 37 and 41 of the Federal Rules of Civil Procedure. Under Rule 37, where a party fails to obey an order, and specifically an order under Rule 35, courts may impose a range of sanctions, up to and including dismissal of a complaint. FED. R. CIV. P. 37(b)(2)(A)(v). "When the facts show willfulness and bad faith, the selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district

238009

court." *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992).[4] Dismissal is particularly compelled under Rule 37 where there is prejudice to the defendant and to the administration of justice. *Burgett v. Gen. Store No Two Inc.*, 727 F. App'x 898, 900 (8th Cir. 2018).

In addition to Rule 37, Rule 41(b) recognizes the Court's "inherent power" to dismiss claims of individuals who do not comply with their obligations as a consequence of "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 630–31; *Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216, 1222 (8th Cir. 1998); *Gilliam v. Johnson*, 2015 WL 1419346, at *6 (W.D. Ark. Mar. 27, 2015). Rule 41(b) specifically provides:

> If the plaintiff fails to . . . comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication upon the merits.

FED. R. CIV. P. 41(b). The "focus is foremost on the egregiousness of the plaintiff's conduct, and only to a lesser extent on the prejudice to the defendant or the administration of justice in the district court." *Burgett*, 727 F. App'x at 900 (citations omitted); *see Henderson v. Renaissance Grand Hotel*, 267 F. App'x 496, 497 (8th Cir. 2008) (per curiam); *Burgs v. Sissel*, 745 F.2d 526, 527 (8th Cir. 1984) (per curiam).

Courts have discretion under both Rules 37 and 41 to issue sanctions ranging in severity. Severe sanctions, though reserved for appropriate cases, serve two important purposes: they hold disobedient plaintiffs like Ms. LeMaire accountable, and they deter other would-be bad actors

---

[4] Additionally, Rule 37(b)(2)(C) requires a district court to alternatively or additionally order the disobedient party to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

238009

from engaging in similar contemptuous conduct. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642–43 (1976) (per curiam) (holding that "the most severe in the spectrum of sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent"). For these important reasons, courts in the Eighth Circuit have dismissed a plaintiff's complaint with prejudice under Rule 41(b) for "willful disobedience of a court order." *Keener v. Godbolt*, 2015 WL 1641891, at *1 (W.D. Ark. Apr. 14, 2015) (citing *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527 (8th Cir. 2000)); *see also Brown v. Frey*, 806 F.2d 801 (8th Cir. 1986) (dismissal with prejudice is appropriate where there is a clear record of contumacious conduct by the plaintiff). Importantly, however, dismissal with prejudice is not reserved only for instances where a plaintiff, like Ms. LeMaire here, has acted in bad faith: such dismissal is appropriate when the plaintiff "acted intentionally as opposed to accidentally or involuntarily." *Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216, 1219 (8th Cir. 1998); *see also Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997) (stating that district courts, to ensure the expeditious handling of cases and to protect the rights of opposing parties to be free of prejudice caused by a litigant's dilatory conduct, have the power to dismiss a litigant's case for failure to comply with a court order for willfulness alone).

      Here, the Court should dismiss Plaintiff's Complaint with prejudice because she acted willfully and deliberately in violating the Court's Order, prejudiced MEC, and has no justifiable reason to excuse her contempt.

238009

> 1. **Plaintiff's Conduct was in Bad Faith and She Deliberately Ignored this Court's August 30, 2018 Order.**

Though courts weigh the need to advance already over-burdened dockets and the prejudice inflicted upon a defendant against the consequence of irrevocably extinguishing the litigant's claim by considering whether a less severe sanction could remedy the effect of the litigant's transgressions, *Hutchins*, 116 F.3d at 1260, this analysis is not necessary here because Plaintiff's conduct was willful, deliberate, and particularly egregious. *See Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d 717, 719 (8th Cir. 2002); *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992); *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992).

For instance, in *Aziz v. T.G. Wright*, 34 F.3d 587 (8th Cir. 1994), the district court dismissed the plaintiff's lawsuit with prejudice after the plaintiff violated the court's order to submit to a deposition. On appeal, the Eighth Circuit held that the district court properly dismissed the plaintiff's lawsuit, particularly in light of the fact that the court warned the plaintiff of the consequences for failure to engage in discovery, and specifically warned him that dismissal of the lawsuit was a possible sanction for violation of the court's order. *Id.* at 589.

Dismissal with prejudice of Plaintiff's Complaint is appropriate because this Court, like the lower court in *Aziz*, expressly warned Plaintiff about the consequences of her failure to comply with its Order. *ECF No. 47*, at P. 10. This sanction is even more appropriate under the facts of the instant matter, however, because in addition to the Order's clear and express warning about the consequences associated with willful disobedience, this Court expressly rejected Plaintiff's stated reasons for refusing to submit to the skin-prick examination. Specifically, while Plaintiff was arguing in the Hedberg Clinic parking lot, she stated—in more colorful language— that she was not going to submit to Dr. Bell's skin-prick examination because she was fearful

238009

that this allergy test could kill her, and that being in the presence of a decorative office aquarium could cause her to experience an allergic reaction. *Exhibit 2(A)*. The Court's Order rejected the notion that the skin-prick examination could kill Plaintiff, and it expressly denied Plaintiff's request to unilaterally decide whether a testing location is safe. *ECF No. 47*, at P. 9. Plaintiff nevertheless willfully refused to submit the skin-prick examination as ordered, and as such, a severe sanction is appropriate. Moreover, Plaintiff's *post hoc* justification for her willful disobedience was already foreclosed by this Court when it ordered Plaintiff to submit to the examination and when it denied her request to determine whether the testing location was safe, and again by Ms. Aponte, when she offered to lead Plaintiff into the Clinic through its employee-only entrance.

Finally, the egregiousness of Plaintiff's misconduct—as evidenced by her own statements—justifies the most severe sanction of dismissal with prejudice. With respect to willfulness, Plaintiff's voicemail from September 17 foreshadowed the fact that Plaintiff was "going to cause a scene." *Exhibit 2(A)*. Plaintiff also stated in her voicemail and during her outburst in the Hedberg Clinic parking lot that:

- she could "go into a coma and . . . die" if Dr. Bell performed the skin-prick examination;

- "[Dr. Bell] [is] not going to freaking kill [her]";

- she was "not choosing death by Dr. Bell"; and

- that the skin-prick examination was "not happening."

*Exhibit 2(A)*. As for the manner in which she spoke to Dr. Bell's staff, Plaintiff repeatedly referred to the "G** d*** fish tank" while screaming at Ms. Aponte, who was only attempting to assist Plaintiff by leading her through the employee-only entrance to alleviate her concerns about the aquarium.

238009

The egregiousness of this conduct is further exacerbated by Plaintiff's antagonistic statements directed specifically at Dr. Bell, including her comment that she was "going to look [Dr. Bell] in [his] eyes," that she was "not choosing death by Dr. Bell" (implying that Dr. Bell could or would kill her), that she was upset because "the friggin' doctor is not going to come out," and that if Ms. Aponte wanted Plaintiff to stop screaming at her, then Ms. Aponte should "send the d*** doctor out." *Id.* In fact, because Plaintiff's conduct was so egregious, her attorney—in addition to repeatedly directing Plaintiff to "calm down"—apologized to Ms. Aponte (and later to Dr. Bell) for Plaintiff's aberrant behavior. *Id.* ("She's not doing anything, she's not doing anything to you. I don't know why you are actually treating her like this.").

Without question, Plaintiff's misconduct was willful, deliberate, and egregious. Accordingly, in answering the question presented—*which sanction is severe enough to punish Plaintiff and to deter other would-be bad actors?*—the Court should exercise its discretion under Rules 37 and 41 and dismiss Plaintiff's Complaint with prejudice as a result of her flagrant violation of this Court's Order.

### 2. Plaintiff's Willful Misconduct has Prejudiced Defendant and the Court, and Will Cause Further Delay if her Complaint is Not Dismissed.

Dismissal with prejudice is further compelled by the detrimental effect of Plaintiff's misconduct on MEC and on the administration of justice. Although the Court, in determining whether to properly dismiss Plaintiff's Complaint, need only consider prejudice to a lesser extent than its consideration of the egregiousness of Plaintiff's misconduct, *see Burgett*, 727 F. App'x at 900, the prejudice here is significant.

Specifically, Plaintiff's willful misconduct has prejudiced MEC as well as the administration of justice in several material ways. First, MEC is prejudiced by its inability to prepare an adequate defense due to Plaintiff's dilatory and willful misconduct, which undermines

238009

its ability to gather information. Indeed, in the absence of Plaintiff's compliance with the Court's Order to submit to a skin-prick examination,[5] MEC would suffer extreme prejudice in the event that Plaintiff's claims are allowed to proceed to trial. As the Court observed, "[t]here is no question that Plaintiff has placed her medical condition in controversy[,]" and given the lack of objective evidence supporting Plaintiff's allegations regarding a seafood allergy, "[t]here is also good cause to order Plaintiff to submit to a medical examination." *ECF No. 47*, at P. 2.

Second, Plaintiff's misconduct has prejudiced MEC's entitlement to the orderly and expeditious disposition of this case. In this respect, MEC has incurred substantial expenses in the course of its efforts to obtain Plaintiff's compliance with her obligations under Rule 35 from March 1, 2018 through the present. Indeed, MEC has spent an inordinate amount of time exchanging correspondence with Plaintiff's counsel; holding telephone conferences with Plaintiff's counsel and MEC's expert; and drafting various motions. For instance, MEC first requested the independent medical examination (IME) on March 1, 2018. *ECF No. 34*, at P. 5. Plaintiff's appointment was scheduled for March 12, 2018, at 3:30 p.m., but on the day of her appointment, Plaintiff's counsel responded and declined to agree to the IME. *Id.* After good-faith conference attempts failed, MEC filed its Motion for Leave to File its IME Motion on April 11 (*ECF No. 32*), and after receiving such approval (*ECF No. 33*), ultimately filed its IME Motion on April 23, 2018. *ECF No. 34.*

While the IME Motion was pending, because several deadlines were quickly approaching, MEC was required to file its Motion to Stay all Deadlines and its later Motion to Extend the Summary Judgment Deadline on July 11 and July 24, 2018. *ECF Nos. 41 & 44*. Once

---

[5] For the purposes of avoiding unnecessary redundancy and duplication, MEC refers the Court to its arguments on this issue outlined in its Brief in Support for Independent Medical Examination. *ECF No. 34*.

the Court granted MEC's Motion on August 30, 2018, several deadlines had already expired, and as such, the Court issued its Second Amended Final Scheduling Order, which reset the trial date, discovery deadline, motions deadlines, and other various deadlines for pretrial filings. *ECF No. 48*.

Third, Plaintiff's misconduct has prejudiced the administration of justice because MEC and the Court are again confronted with yet another scheduling and procedural issue due to Plaintiff's willful failure to comply with this Court's Order. Specifically, the parties were ordered to find a mutually agreeable time for Plaintiff to submit to the examination within thirty (30) days from the entry of the Court's August 30, 2018 Order. *ECF No. 47*, at P. 10. Only two days remain to attempt to reschedule the examination, and in the first instance, it took Plaintiff over two weeks to agree to undergo the skin-prick examination (which, in retrospect, was an exercise in futility) on September 18, 2018. Now, Plaintiff takes the extraordinary position that she would only be willing to submit to an examination if Dr. Bell can uproot his clinical staff, find a new location, transport his necessary equipment and supplies, including those necessary to treat potential anaphylaxis, and perform his examination in a foreign and unknown environment—all because Plaintiff believes, without any proof or objective evidence to support her unreasonable position, that a decorative office aquarium could cause her to experience a life threatening reaction. There is no objective medical evidence to support Plaintiff's belief that she had an allergic reaction the first time she visited the Hedberg Clinic (at its Rogers location) on July 27, 2016,[6] and there is no legitimate basis to justify Plaintiff's willful and deliberate refusal

---

[6] Plaintiff's refusal to allow Dr. Bell to conduct a skin-prick examination is not an isolated incident. Prior to filing this lawsuit, while MEC was engaged in the good-faith accommodation process, Plaintiff was directed to obtain a second opinion from the Hedberg Clinic on July 27, 2016. Though she arrived for that appointment, she ultimately refused to

238009

to comply with this Court's Order when she chose not to submit to the skin-prick examination on September 18, 2018.

Because it is highly unlikely that these issues could be resolved by the Court's deadline, MEC would be forced to file additional papers to address the likely need to reschedule all upcoming deadlines and to explain why the extraordinary measures that Plaintiff has now requested, without justification, are simply unnecessary. The prejudice to MEC, and by extension to this Court, as a result of Plaintiff's willful failure to comply with the Court's Order is self-evident, and there is no justification to support any sanction other than dismissal with prejudice.

### 3. A Lesser Sanction Would Fail to Sufficiently Punish Plaintiff and Deter Other Would-be Disobedient Litigants From Flouting this Court's Orders.

While the Court should consider whether lesser sanctions are appropriate, the court is not "constrained to impose the least onerous sanction available, [and] may exercise its discretion to choose the most appropriate sanction under the circumstances." *Mathers v. Abney*, 2017 WL 2371135, at *1 (D.N.D. May 31, 2017) (quoting *Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 939 (8th Cir. 2000)). Dismissal with prejudice is proper where the Court, after "balancing the policy of giving the plaintiff her day in court against policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures[,]" finds that a litigant's conduct was sufficiently egregious. *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 659–60 (8th Cir. 1983). "In striking this balance, all the facts and circumstances of the case must be considered." *Id.* (opining that the egregiousness of plaintiff's conduct is the most important factor for the court to consider); *see also Trotter v. Larson*, 636 F. App'x 371 (8th Cir. 2016)

---

submit to that initial objective examination because she saw an office aquarium, which she claimed required emergency treatment. *See ECF No. 34*, at P. 3, 11–12.

238009

(opining that dismissal with prejudice for failure to prosecute is proper where there is a clear record of contumacious conduct by the plaintiff and lesser sanctions prove futile).

Here, in analyzing the proportionality of MEC's requested sanction—dismissal with prejudice—against the conduct at issue, the Court should consider one simple question: is there any excuse for Plaintiff's offensive treatment of Dr. Bell's staff in the course of willfully violating this Court's Order? The answer, MEC respectfully submits, is "no."

Plaintiff's conduct was solely within her own province. On her own volition, Plaintiff chose to violate this Court's Order, and she chose to "cause a freaking scene"—by directing derogatory statements at Ms. Aponte and at Dr. Bell—in the process. Accordingly, this Court, to both punish Plaintiff's bad conduct and to deter others who would so brazenly flout a clear and explicit court order, should dismiss Plaintiff's Complaint with prejudice pursuant to Rules 37 and 41 of the Federal Rules of Civil Procedure.

**B.     IN ADDITION TO DISMISSING PLAINTIFF'S COMPLAINT, THE COURT SHOULD ORDER PLAINTIFF TO PAY MEC'S COSTS AND EXPENSES ASSOCIATED WITH HER MISCONDUCT.**

MEC should not be forced to bear the burden of Plaintiff's contempt. Accordingly, MEC requests that the Court order Plaintiff to pay MEC's costs and expenses, including attorneys' and expert fees, incurred in connection with her failure to submit to the September 18 skin-prick examination and in making the instant Motion. *See, e.g., Walker v. TA Operating LLC*, 2015 WL 1899793, at *2 (W.D. Ark. Apr. 27, 2015); *Nick v. Morgan's Foods, Inc.*, 270 F.3d 590 (8th Cir. 2001). This relief is available under Rule 37(b)(2)(C), which requires Plaintiff to pay these expenses because her refusal to comply with the Court's Order was not substantially justified. There was no legitimate basis for Plaintiff to refuse to enter the Hedberg Clinic, and there was certainly no justification for the manner in which she treated Dr. Bell's staff.

238009

Because MEC has been forced to incur substantial expenses in connection with Plaintiff's misconduct, the Court should additionally hold Plaintiff accountable by ordering her to pay MEC's attorneys' and expert fees in connection with her refusal to attend the Court-ordered examination. MEC specifically requests that the Court allow MEC to submit a fee petition within ten (10) days after it resolves the present Motion.

## IV. CONCLUSION

The Court warned Plaintiff about the potential consequences for her failure to comply with its August 30, 2018 Order. Plaintiff—without justification or provocation—violated the Order in a very public and disruptive manner, with full awareness that these consequences could include dismissal of her lawsuit. Given the importance of the examination, the egregiousness of the manner in which she treated Dr. Bell's staff, and the illogical, inconsistent, and insincere *post hoc* rationalization for her refusal to undergo the skin-prick test, the Court should now enforce its Order and dismiss Plaintiff's Complaint with prejudice. Additionally, given the significant costs MEC has incurred in connection with Plaintiff's contempt, MEC requests the imposition of monetary sanctions. MEC will be prepared to submit its fee petition within ten days from the Court's ruling on this Motion.

Respectfully submitted,

*/s/ Missy McJunkins Duke*
Missy McJunkins Duke (#99167)
Abtin Mehdizadegan (#2013136)
**CROSS, GUNTER WITHERSPOON
  & GALCHUS, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: 501-371-9999 / Fax: 501-371-0035
E-mail: mduke@cgwg.com
           abtin@cgwg.com

238009

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 27th day of September, 2018, I electronically transmitted a copy of the foregoing document to the following via email:

Joseph F. Gilker
Chris Woomer
GILKER AND JONES, P.A.
9222 North Highway 71
Mountainburg, Arkansas 72946
gilkerlaw@aol.com
chris.woomer@gilkerandjones.com

                                    */s/ Missy McJunkins Duke*
                                    Missy McJunkins Duke

238009