UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BELINDA LEMAIRE                                                                                   PLAINTIFF

VS.                                     No. 5:17-cv-05104

MONSTER ENERGY COMPANY                                                         DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Monster Energy Company's motion (Doc. 49) to dismiss Plaintiff's complaint and brief (Doc. 50) in support of its motion. Plaintiff filed a response (Doc. 55) in opposition and a brief (Doc. 56) in support of her response. Separately, Plaintiff filed a motion (Doc. 51) for relief from the Court's order (Doc. 47), but did not file a brief in support of her motion as required by Local Rule 7.2. Defendant filed a response (Doc. 52) in opposition and a brief (Doc. 53) in support of its response. Defendant seeks dismissal of Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 37 and 41 for Plaintiff's failure to comply with the Court's order requiring Plaintiff to submit to a medical examination into the existence and extent of her alleged seafood allergy. Defendant also requests attorney's fees and costs resulting from Plaintiff's actions. Plaintiff seeks relief from the Court's order so that she may undergo a medical examination at a different location of her choosing. For the reasons set forth below, Defendant's motion will be granted in part and denied in part, and Plaintiff's motion will be denied.

**I.       Background**

Plaintiff asserts several claims against Defendant for violations of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), and the Arkansas Civil Rights Act (ACRA). With respect to her disability-based claims, Plaintiff asserts that she has a severe allergy to seafood that

qualifies as a disability and that Defendant has discriminated against her and refused to reasonably accommodate her on the basis of this disability. The parties have engaged in discovery and at this point there is no admissible objective evidence of Plaintiff's allergy. Even Plaintiff's physician and proposed expert, Dr. Tina Merritt, whose diagnosis of Plaintiff's seafood allergy the Court found to be an unreliable expert opinion, testified that absent from her opinion is an objective medical basis to support her recommendations and conclusions. (Doc. 36-1, pp. 13-14; Doc. 36-1, p. 19; Doc. 36-1, p. 20).

On April 23, 2018, Defendant filed a motion (Doc. 33) to require Plaintiff to submit to an independent medical examination to obtain evidence regarding her claimed seafood allergy. On August 30, 2018, the Court entered an order (Doc. 47) requiring Plaintiff to submit to a skin-prick test at the direction of Dr. Bell. The Court further ordered that it was not within Plaintiff's discretion to unilaterally determine whether the clinic was safe as a testing location. The primary purpose of this examination was to determine whether Plaintiff has a legitimate seafood allergy. In its order, the Court issued a clear warning that "failure to comply with [the] order will result in an appropriate sanction, including dismissal." (Doc. 47, p. 10).

The parties conferred and agreed that Plaintiff would undergo skin-prick test at Dr. Bell's clinic on September 14, 2018. (Doc. 49-1). On September 14, Plaintiff appeared at the clinic for the test as ordered. Thereafter, she discovered a decorative aquarium inside the lobby of Dr. Bell's clinic. Plaintiff grew angry and refused to enter the clinic because of the "God damn fish tank." (Doc. 49, Ex. 2-A, Video: Hedberg Clinic Parking Lot on September 14, 2018 (2018) (on file with Court)). Plaintiff repeatedly shouted that the aquarium would cause her to suffer an allergic reaction. The clinic staff attempted to accommodate Plaintiff's fears by allowing her to access the employee entrance at the back of the clinic. Plaintiff still refused to enter the clinic, loudly cursing

about the fish tank and accusing the clinic staff of dishonesty. Plaintiff also vehemently described the situation as a matter of life or death because the skin-prick test could cause her to fall into a coma. She stated that a skin-prick test could cause her die within two minutes, and she refused to die from an examination by Dr. Bell. Plaintiff yelled that she would "cause a freaking scene" because if "y'all put that on my skin, I can go into a coma and I can die." (Doc. 49, Ex. 2-A, Video: Hedberg Clinic Parking Lot on September 14, 2018 (2018) (on file with Court)). Plaintiff ultimately did not undergo the skin-prick on September 14, 2018, and no medical examination occurred thereafter.

Approximately two weeks later, on September 27, 2018, Plaintiff filed a motion seeking leave from the Court's order. In her motion, Plaintiff seeks permission to undergo an examination at a location of her choice, and not at Dr. Bell's clinic. On September 27, 2018, Defendant filed the instant motion seeking sanctions under Federal Rules of Civil Procedure 37 and 41 for Plaintiff's failure to comply with the Court's order. Specifically, Defendant seeks dismissal of Plaintiff's complaint and attorney's fees and costs that flow from Plaintiff's violation of the Court's order.

**II.   Discussion**

Plaintiff argues that the Court's analysis of Defendant's motion should be limited to Federal Rule of Civil Procedure 37(b) because Plaintiff violated a discovery order. To support her argument that Rule 37 provides the exclusive avenue for any sanction for her violation of the Court's order, Plaintiff cites *Sentis Group, Inc., Coral Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 899-900 (8th Cir. 2009) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 207 (1958)). Although Plaintiff correctly identifies an important distinction between the analysis under Rules 37 and 41, *Sentis* does not stand for the

proposition that the Court must only consider sanctions pursuant to Rule 37. *See id.* at 899-900. Instead, *Sentis* cautions that a Rule 37 analysis must not blend within it an inherent-authority analysis under Rule 41. *See id.* at 899 ("[T]he guidance from [*Soceiete Internationale*] is clear, and we emphasize the better practice is to apply Rule 37 where appropriate and not allow an exercise of inherent power to "obscure" the Rule 37 analysis."); *id.* at 899 ("[A] Rule 37 analysis normally should stand alone and not blend together with a less-structured, inherent-authority analysis."); *see also Burgett v. Gen. Store No Two Inc.*, 727 F. App'x 898, 900 (8th Cir. 2018) (affirming dismissal under both Rule 37 and Rule 41). Accordingly, the Court will consider first whether sanctions are appropriate under Rule 37, and then under Rule 41.

If a party fails to obey an order to provide or permit discovery, the Court may impose appropriate sanctions. Fed. R. Civ. P. 37(b)(2)(A). The district court has "wide latitude in imposing sanctions for failure to comply with discovery." *Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994). "If the violation is willful and in bad faith, then the appropriateness of dismissal as a sanction is 'entrusted to the sound discretion of the district court.'" *Burgett*, 727 F. App'x at 900 (citing *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992)). Dismissal as a discovery sanction is available only if there is (1) an order compelling discovery; (2) a willful violation of the order; and (3) prejudice. *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014). A court dismissing under Rule 37 need not investigate lesser sanctions when a party's violation is deliberate. *Id.* at 992-93.

There is no dispute the Court issued an order on August 30, 2018 requiring Plaintiff to submit to a skin-prick test, nor is there any dispute that Plaintiff violated the order. The question is whether Plaintiff willfully violated the order, and whether the violation prejudiced Defendant. Plaintiff argues this case is not a "black-and-white determination of willfulness" because her

4

refusal to comply with the Court's order was not "in deliberate and contumacious disregard for the Court's directives." (Doc. 56, p. 5). Plaintiff instead states, both in her response and while at the clinic, that she refused to undergo the test because she feared she would suffer an allergic reaction from the aquarium in Dr. Bell's clinic. The evidence suggests otherwise. In addition to complaining about Dr. Bell's fish tank, Plaintiff shouted repeatedly that the skin-prick test would cause her to suffer an allergic reaction, that she would not allow the clinic staff to touch her skin, and that she refused to "choos[e] death by Dr. Bell." (Doc. 49, Ex. 2-A, Video: Hedberg Clinic Parking Lot on September 14, 2018 (2018) (on file with Court)). Clinic staff sought to alleviate Plaintiff's concerns about the aquarium by guiding her through a back entrance away from the fish tank.

Additionally, though her opinion ultimately is unreliable, even Plaintiff's physician, Dr. Merritt testified that the mere presence of fish in sitting water would not cause Plaintiff to suffer an allergic reaction. (Doc. 36-1, p. 20). Dr. Merritt specified that if Plaintiff does in fact suffer from a seafood-based allergy, it is more likely attributable to aerosolized proteins and cross-contamination of cooked fish. (Doc. 36-1, p. 20). It is not enough, according to Dr. Merritt, for Plaintiff to smell "a fish in the water" because there "wouldn't be enough airborne allergen." (Doc. 36-1, p. 14). Rather, Dr. Merritt speculated that what "might be causing" Plaintiff's allergic reaction is airborne allergens released from the boiled vapors of cooked fish. (Doc. 36-1, p. 14).

Plaintiff repeatedly refused the clinic staff's proposed entry accommodation to allow her to avoid the fish tank, and Plaintiff's own physician testified that a fish tank poses no significant risk to Plaintiff. The scene regarding the fish tank is nothing more than pretext to avoid the Court ordered skin-prick test. The Court's order clearly required Plaintiff to submit to a skin-prick test under the direction of Dr. Bell, and Plaintiff made a conscious decision not to enter the clinic for

that purpose. Plaintiff willfully and deliberately violated the Court's directive.

The final issue is whether Defendant suffered prejudice. Plaintiff's medical condition, specifically whether she has a seafood allergy, is in dispute. (Doc. 47). The existence of an allergy is crucial to her disability-based claim. Her repeated refusal to undergo a skin-prick test following blood test results that were negative for indicators of a seafood allergy ensures that neither party has access to objective evidence of her condition, which both parties acknowledge her claim presently lacks. Such prejudice is significant. Having found each of the necessary elements, the Court finds that dismissal of Plaintiff's disability-based claims is appropriate. Because Plaintiff deliberately violated the Court's order, the Court need not consider lesser sanctions.

Defendant also requests attorney's fees and costs incurred as a result of Plaintiff's failure to comply with the Court's order. (Doc. 49). Rule 37(b)(2)(C) provides that a "court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Plaintiff's failure was not substantially justified, but circumstances exist that make the imposition of fees and costs unjust. The record is devoid of any legitimate justification for Plaintiff's actions. Plaintiff will not suffer an allergic reaction merely from being in the presence of a fish tank and is unlikely to experience serious adverse side effects from a skin-prick test. Nevertheless, the Court believes that Plaintiff genuinely feared for her life. While her willful refusal to abide by a Court order is sufficient to support dismissal of the action, awarding fees and costs in the face of Plaintiff's genuine, if unreasonable, fear would be unjust. Defendant's request for attorney's fees and costs will be denied.

The remainder of Plaintiff's complaint is also subject to dismissal pursuant to Rule 41. An

6

action may be dismissed pursuant to Rule 41(b) "if a plaintiff has failed to comply with any order of the court." *Aziz*, 34 F.3d at 589. "Under Rule 41(b), the focus is foremost on the egregiousness of the plaintiff's conduct, and only to a lesser extent on the prejudice to the defendant or the administration of justice in the district court." *Burgett*, 727 F. App'x at 900. The Court need not find that Plaintiff acted in bad faith, only that she acted intentionally as opposed to accidentally or involuntarily. *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998). A court may dismiss a complaint after issuing a warning that failure to comply with the court's directive could result in dismissal of the case. *Aziz*, 34 F.3d at 589; *see also Smith v. Gold Dust Casino*, 526 F.3d 402, 405-06 (8th Cir. 2008) ("This is not a case where a litigant flagrantly disregarded or ignored any advance warning from the district court that failure to comply with discovery . . . would result in dismissal with prejudice.").

Plaintiff argues that Rule 37 exclusively applies to Defendant's motion[1] and thus offers no evidence that her conduct falls short of egregious. Plaintiff's conduct both at the clinic and in the days following rises to that level. While at the clinic, Plaintiff yelled at clinic employees who were trying to help accommodate to her concerns, directing expletives and accusations of dishonesty at those employees. Plaintiff did so knowing that she was "mak[ing] a scene." (Doc. 49, Ex. 2-A, Video: Hedberg Clinic Parking Lot on September 14, 2018 (2018) (on file with Court)). Plaintiff's own attorney even cautioned Plaintiff about her conduct and apologized repeatedly to the clinic staff.

More importantly, the Court made two directives in its order very clear. First, the Court required Plaintiff to submit to a skin-prick test at the direction of Dr. Bell, and stated Plaintiff had

---

[1] Plaintiff asserts that dismissal is inappropriate as to her gender and age discrimination claims. However, Plaintiff's second amended complaint (Doc. 23) contains no factual allegations to support either a gender discrimination or age discrimination claim.

7

no discretion to unilaterally determine whether the clinic was safe. (Doc. 47, p. 9). Plaintiff was therefore required to submit to the examination at Dr. Bell's clinic. Second, the Court cautioned Plaintiff that her failure to comply with the order would result in an appropriate sanction, "including dismissal." (Doc. 47, p. 10). Plaintiff was on notice that refusal of the Court's order would leave her suit subject to dismissal. *Aziz*, 34 F.3d at 589; *Smith*, 526 F.3d at 405-06. Furthermore, Plaintiff's conduct at the clinic while intentionally refusing to comply with the Court's order was egregious. Dismissal of all claims is appropriate. Defendant's motion to dismiss the complaint will be granted. Plaintiff's motion for relief from order will be denied as moot.

### III. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 49) to dismiss Plaintiff's complaint is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as Plaintiff's complaint is DISMISSED WITH PREJUDICE. The motion is DENIED as to Defendant's request for attorney's fees and costs.

IT IS FURTHER ORDERED that Plaintiff's motion (Doc. 51) for relief from order is DENIED AS MOOT. Judgment will be entered accordingly.

IT IS SO ORDERED this 18th day of October, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE